1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&M ASSOCIATES, INC., | CASE NO. 06-CV-903 W (JMA) |
| Plaintiff, | |
| v. | **ORDER DENYING NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT** |
| NATIONAL UNION FIRE INSURANCE CO., et al., | |
| Defendants. | |

On March 16, 2006, Plaintiff J&M Associates, Inc. (J&M), a temporary-employment agency, filed a complaint in the San Diego Superior Court seeking declaratory relief against and damages from its insurer, Defendant National Union Fire Insurance Co. (National Union). After National Union removed the action here, J&M sought summary judgment on its claim for a declaration that National Union had a duty to defend National Steel & Shipbuilding Co. (NASSCO) under a blanket additional-insured endorsement against a personal-injury case that J&M's temporary employee filed. Having denied that motion, the court now decides National Union's motion for summary judgment based on the order denying J&M's motion. Because National Union misconstrues the scope of that order, the court **DENIES** National Union's motion.

I.      <u>Facts</u>

The parties basically agree on all relevant facts.  National Union issued a staffing-services liability policy to J&M.  The policy covered "damages because of bodily injury." (Notice of Lodgment [NOL] Ex. 1 at 2.)  The policy included a blanket additional-insured endorsement extending coverage to "[a]ny person or organization as required by [J&M's] contract or agreement . . . but only with respect to that person or organization's liability arising out of [J&M's] operations as a staffing service." (<u>Id.</u> at 28.)  The policy obligated National Union to defend against any claim.  (<u>Id.</u> at 12.)

J&M signed a Master Labor Purchase Agreement (Labor Contract) with NASSCO on April 14, 2004.  The Labor Contract specified projects for which NASSCO needed temporary skilled laborers, designated hourly wages, reserved NASSCO's right to hire and fire, and outlined other on-site procedures for temporary employees.  (NOL Ex. 3 at 1–6.)  The Labor Contract obligated J&M to perform background checks, drug screens, and skills tests on all temporary employees.  (<u>Id.</u> at 6–7.)  It also required J&M to obtain insurance.  (<u>Id.</u> at 7.)  As described in a second contract (<u>see</u> Ex. 4), J&M needed "[c]omprehensive public liability, broad form property damage and personal injury insurance with coverage to include premises operations, products liability, completed operations hazard, contractual liability (specifically including the risks assumed hereunder) and independent contractors" (<u>id.</u> at 15).  The same contract obligated J&M to indemnify NASSCO against "all claims and liabilities . . . for injury or death to persons (including agents and employees of [J&M] . . . ) . . . arising directly or indirectly out of or in connection with the performance of this [c]ontract . . . excluding only claims and liabilities based on [NASSCO]'s sole negligence or willful misconduct." (<u>Id.</u> at 12.)

In May 2005, temporary employee Alan Melendez sued NASSCO and BP Oil Shipping Co. He allegedly injured his back falling from a ladder or ramp on July 3, 2004. (NOL Ex. 2 at 2.)  National Union twice denied that it had a duty to defend in the Melendez action.  (<u>Id.</u> Exs. 6, 7.)  National Union explained that NASSCO was not an

1   additional insured because Melendez's injury did not arise out of J&M's operations as

2   a staffing service.  (Id. Ex. 7 at 6.)  NASSCO later hired its own attorney to defend in

3   the Melendez action, at J&M's expense, and assigned its rights as an additional insured

4   to J&M.  (Id. Ex. 8.)  Thus, J&M seeks a declaration that National Union improperly

5   refused to defend NASSCO in the Melendez action.

6

7   **II.   Legal Standards**

8          Summary judgment is appropriate when the moving party demonstrates that no

9   genuine issue of material fact remains and that it is entitled to judgment as a matter of

10  law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If

11  the moving party meets its burden, the "adverse party may not rest upon the mere

12  allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e). Rather, the

13  response "must set forth specific facts showing that there is a genuine issue for trial."

14  Id. But if a reasonable person, taking all reasonable inferences in the nonmoving party's

15  favor, could return a verdict in its favor, the moving party has not met its burden, and

16  summary judgment is not appropriate.  See id.

17         The interpretation of an insurance contract is a matter of law for the court.  Cal.

18  Civ. Proc. § 437c; Old Republic Ins. Co. v. Superior Ct., 66 Cal. App. 4th 128, 141–42

19  (1998).  "While insurance contracts have special features, they are still contracts to

20  which the ordinary rules of contractual interpretation apply."  Foster-Gardner, Inc. v.

21  Nat'l Union Fire Ins. Co., 18 Cal. 4th 857, 868 (1998).  If contractual language is clear

22  and explicit, it governs.  Id.  If it is capable of two or more reasonable constructions,

23  however, it will be considered ambiguous.  Id.  Contractual language must be construed

24  in the context of the instrument as a whole, and in the circumstances of the case, and

25  cannot be found ambiguous in the abstract.  Id.  Even then, courts only invoke the

26  principle that ambiguities are construed against the insurer if the insured had an

27  objectively reasonable expectation of coverage.  Id.

28  //

An insurer's duty to defend is broader than its duty to indemnify.  <u>Montrose</u> <u>Chem. Corp. v. Superior Court</u>, 861 P.2d 1153, 1160 (Cal. 1993) (*en banc*).  To determine whether the insurer owes a duty to defend, the court must compare the allegations of the underlying complaint with the terms of the policy.  <u>Id.</u> at 1157.  The insurer must defend if the complaint raises any potential for coverage.  <u>Id.</u>  On the other hand, the duty to defend, "although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy."  <u>Waller v. Truck Ins. Exch., Inc.</u>, 11 Cal. 4th 1, 19 (1995).  The insurer has no duty to defend if the potential for liability is "tenuous and farfetched."  <u>Michaelian v. State Comp. Ins. Fund</u>, 50 Cal. App. 4th 1093, 1106 (1996).

## III.   <u>Procedural History</u>

On September 15, 2006, J&M moved for partial summary judgment on one issue: that National Union owed a duty to defend in the Melendez action.  J&M forwarded two distinct arguments in its motion.  (1) Because California law does not import "a particular standard of causation or theory of liability" into the phrase "arising out of," the Melendez injury arose out of J&M's operations as a matter of law.  (<u>See</u> Pl.'s Mem. P. & A. in Supp. of Mot. for Summ. J. at 1.)  (2) The term "staffing services" is ambiguous, but must be interpreted in favor of the insured to protect the insured's reasonable expectations of coverage.  (<u>See</u> <u>id.</u>)

On February 5, 2007, the court denied J&M's motion.  The court rejected both of J&M's arguments.  Under <u>St. Paul Fire & Marine Insurance Co. v. American Dynasty</u> <u>Surplus Lines Insurance Co.</u>, 101 Cal. App. 4th 1038, 1056–57 (2002), the court could not conclude, *as a matter of law*, that the Melendez injury fell within the intended scope of the phrase "arising out of your operations as a staffing service."  <u>St. Paul</u> stands for the proposition that even though *California law* does not import a heightened standard of causation into that phrase, the insured's *other contracts* may.  Thus, J&M failed to show that it was entitled to judgment as a matter of law.

1    Further, having failed to establish that the Melendez injury necessarily arose out
2    of J&M's operations, J&M argued Melendez's actual job duties were themselves some
3    of J&M's "staffing services"—or at the very least, the phrase "staffing services" was
4    ambiguous.  The court disagreed, both for grammatical and legal reasons that precluded
5    construing the provision against the drafter.  Therefore, it denied J&M's motion.

6

7    **IV.    Discussion**

8    National Union now contends that the court's order denying summary judgment
9    for J&M entitles *National Union* to summary judgment.  While some passages in the
10   order suggest National Union had no duty to defend as a matter of law, the holdings and
11   context of the order preclude such an expansive interpretation.  Further, the court
12   specifically reserved judgment on the possibility that J&M and NASSCO attached a
13   special meaning to the indemnity and required-insurance provisions.  Thus, even had
14   National Union met its initial burden under Rule 56, J&M responded with an affidavit
15   creating a genuine issue of material fact for trial.  Therefore, the court will deny
16   National Union's motion.

17

18   **A.    National Union has not met its burden to show that it had no duty to defend.**
19   To prevail on a motion for summary judgment, National Union must show that
20   the policy gave rise to no potential for coverage as a matter of law.  "At the summary
21   judgment stage, the insured must prove the existence of any potential for coverage,
22   while the insurer must establish the absence of any such potential."  Vann v. Travelers
23   Co., 46 Cal. Rptr. 2d 614, 619 (Cal. Ct. App. 1995).  Because National Union rests
24   solely on an order concluding that J&M failed to meet its burden—and adds nothing
25   new to the record—the court cannot conclude that the insured's failure to prove the
26   existence of a potential for coverage allows the insurer to prevail as a matter of law.  On
27   the record before the court here, National Union has not shown that the additional-
28   insured endorsement negates any potential for coverage.

1   National Union paraphrases several passages from the court's prior order.  Most
2   critically, it construes the order as holding that "National Union had no duty to defend
3   NASSCO against the Melendez lawsuit under the Policy."  (Def.'s Mem. P. & A. in
4   Supp. of Mot. for Summ. J. at 2, citing Order at 13.)  But the order says no such thing:
5   "But to conclude, as a matter of law, that National Union must defend regardless of
6   J&M's fault, or that Melendez's mere presence at NASSCO implies fault, goes too far."
7   By its own terms, the order rejects J&M's argument that the policy only requires a
8   factual nexus between J&M's operations and Melendez's injury.  It says nothing about
9   whether National Union had no duty to defend as a matter of law.

10   Certain passages, taken out of context, do lend support to National Union's
11   argument.  Consider the following paragraph:

12   J&M cannot avoid the causal language in the indemnity provision
13   by relying on the policy language.  Again, the policy expressly requires a
       "contract or agreement" to create an additional insured.  The additional-
14   insured endorsement incorporates the conditions and exclusions of the
       included indemnity.  Thus, the policy covers NASSCO's liability for bodily
15   injury arising out of J&M's knowing or negligent performance of its
       contractual obligations, even if its negligence combines with other causes
16   ("including liabilities . . . based in whole *or in part* . . . on the negligence of
       [J&M]" (emphasis added)).  (NOL Ex. 4 at 12.)  It does *not* cover
17   NASSCO's liability for bodily injury as a result of NASSCO's sole
18   negligence—even if it does "arise out of" J&M's operations as a staffing
       service.  (Id.)  The reference to J&M's "operations as a staffing service,"
19   when considered alongside its indemnity promise, requires the court to
       conclude that the additional-insured endorsement extends only as far as
20   the indemnity.  See St. Paul, 101 Cal. App. 4th at 1059.
21

22   (Order at 7–8.)  Following St. Paul, National Union now argues that the policy language
23   has not changed, the Melendez complaint has not changed, and thus its potential
24   liability could not change.  And so it might appear.

25   But the context of that passage—to introduce a new section on the relationship
26   between the insurance policy and the contract between J&M and NASSCO—confirms
27   that it only served as the reasonable underlying contractual interpretation precluding
28   summary judgment in J&M's favor.  Indeed, without evidence from J&M or NASSCO,

06cv903

1   <u>St. Paul</u> effectively sets up a default governing rule.  Subsequent case analysis contrasted

2   <u>Chevron</u>, a case involving evidence of the insured's intent, to underscore precisely how

3   J&M failed to meet its burden.

4          Thus, the court's holding appears later in that section: "J&M's subsequent

5   contracts would determine whether the policy covered the sole negligence of an

6   additional insured." <u>St. Paul</u>, alongside earlier analysis regarding the scope of "staffing

7   services," also supports the conclusion that NASSCO had no objectively reasonable

8   expectations of coverage for Melendez's actual time at work *based solely on the insurance*

9   *policy*, regardless of any ambiguity in that phrase.  But that does not assist National

10  Union now that the focus has shifted to the *J&M-NASSCO contract*.  National Union

11  cannot quote portions of the opinion regarding the scope of "staffing services" to bolster

12  its argument regarding the construction of a separate contract.

13

14  **B.    Even if National Union had met its burden, J&M created an issue of fact.**

15          Assuming for the sake of argument that National Union were entitled to

16  judgment as a matter of law based on the prior order, J&M introduced new evidence of

17  its intent in contracting with NASSCO.  Earlier, when the court lacked any such

18  evidence, it gave the J&M-NASSCO contract its ordinary meaning (with some help

19  from the case law).  <u>See</u> <u>Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.</u>, 18 Cal. 4th

20  857, 868 (1998) ("If contractual language is clear and explicit, it governs.").  Indeed, the

21  court remarked that it had "no evidence whatsoever bearing on whether the parties

22  intended the insurance to cover NASSCO's sole negligence."  (Order at 9.)

23          Under California law, however, the court may consider extrinsic evidence in a

24  two-step process.  First, the court considers "whether the offered evidence is relevant

25  to prove a meaning to which the language of the instrument is reasonably susceptible."

26  <u>Dore v. Arnold Worldwide, Inc.</u>, 39 Cal. 4th 384, 391 (Cal. 2006) (quoting <u>Pac. Gas &</u>

27  <u>Elec. Co. v. G. W. Thomas Drayage & Rigging Co.</u>, 69 Cal. 3d 33, 36 (Cal. 1968)).

28  Such evidence may include testimony regarding the circumstances surrounding the

1   making of the agreement so that court can "place itself in the same situation in which
2   the parties found themselves at the time of the contracting." Pac. Gas & Elec. Co., 69
3   Cal. 3d at 39–40. Id. (quoting Universal Sales Corp. v. Cal. Press Mfg. Co., 20 Cal. 2d
4   751, 756 (Cal. 1942)).  Second, if preliminary consideration reveals that the language
5   of the contract in light of all the circumstances is "fairly susceptible of either one of the
6   two interpretations contended for," then the court must admit the extrinsic evidence
7   to prove either meaning. Id.

8        Confronted with evidence of a contracting party's intent, the court cannot now
9   agree with National Union that it has already construed the contract as a matter of law.
10  The Tripi declaration states that NASSCO "fully expects that any cost of the required
11  insurance . . . be included in the vendor's negotiated contract charges." (Tripi Decl. ¶
12  4.)  Further, NASSCO does not, as a matter of course, "carry workers' compensation
13  insurance that would cover the employees of its subcontractors," and "requires its
14  subcontractors . . . to provide NASSCO with insurance protection" for that reason. (Id.
15  ¶ 5.) Thus, custom and practice in NASSCO's industry and NASSCO's own subjective
16  belief suggest that the parties never intended the indemnity provision  to control the
17  insurance-requirement provision.  J&M's argument finds support in the case law, and
18  thus, the court must admit the Tripi declaration as relevant to prove an alternative
19  reasonable interpretation of the contract. See Chevron v. U.S.A., Inc. v. Bragg Crane
20  & Rigging Co., 180 Cal. App. 3d 639, 642–44 (1986); see also Shell Oil Co. v. National
21  Union Fire Ins. Co., 44 Cal. App. 4th 1633, 1633 (Cal. App. Ct. 1996).

22       Contrary to National Union's suggestion, no inconsistency results from denying
23  its motion. Without the Tripi declaration, nothing brought J&M and NASSCO within
24  the Shell-Chevron rule as a matter of law.  With it, the court has two reasonable
25  interpretations of the contract before it—but only one interpretation can prevail.  As
26  in Chevron, that interpretation requires a factfinder to analyze all the surrounding
27  circumstances to ascertain the mutual intention of the parties. As the court implied in
28  its prior order, that neither establishes nor negates a potential for coverage as a matter

1  of law.   Rather, given one legally binding contractual interpretation, whether a

2  complaint potentially falls within it remains a separate question.

3          In any event, the court cannot resolve the factual issue of J&M and NASSCO's

4  mutual intent at the time of contract formation here.  National Union offers no other

5  argument by way of reply.  Further, since National Union's other arguments all depend

6  on those material facts, the court need not address any of its arguments for partial

7  summary judgment.

8

9  **V.**    **Conclusion & Order**

10         For the foregoing reasons, the court hereby **DENIES** National Union's motion

11  for summary judgment, or in the alternative, partial summary judgment [Doc. No. 57]

12  in its entirety.

13         **IT IS SO ORDERED.**

14

15

16  DATED:  September 18, 2007

17

18                                              _____
                                                Hon. Thomas J. Whelan
19                                              United States District Judge

20

21

22

23

24

25

26

27

28