UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&M ASSOCIATES, INC., <br><br>　　　　　Plaintiff, <br><br>v. <br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al., <br><br>　　　　　Defendants. | Case No. 06-CV-0903-W (JMA) <br><br>**ORDER:** <br><br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES [Doc. 76] AND** <br><br>**(2) REQUIRING DEFENDANT TO PROVIDE AMENDED DISCOVERY RESPONSES AND REQUIRING PARTIES TO MEET AND CONFER REGARDING DISCOVERY ADDRESSED IN PLAINTIFF'S "SUR-REPLY" [Doc. 85]** |

　　　Plaintiff J&M Associates, Inc. ("J&M") has filed a motion for an order compelling Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") to respond to various written discovery requests. National Union opposes. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** J&M's motion.

　　　With respect to the discovery requests addressed in J&M's "Sur-Reply" and National Union's Response thereto, the Court **ORDERS** that National Union provide amended responses as set forth

below and that counsel meet and confer concerning any remaining disputed issues.

**I.   BACKGROUND**

The factual background of this case has previously been set forth in two comprehensive orders issued by District Judge Whelan (see Docs. 44 & 64) and need not be repeated here.

With respect to the instant dispute, in January 2007, J&M propounded requests for production of documents and special interrogatories upon National Union.  National Union's responses to this discovery were postponed pending the outcome of the summary judgment motions filed before Judge Whelan.  Following the denial of the summary judgment motions (Docs. 44 & 64), this Court convened a Case Management Conference and ordered that National Union's responses to the outstanding written discovery be provided by no later than November 30, 2007.  Doc. 67. National Union served its discovery responses and objections on that date, and the parties were unable to resolve their disputes in subsequent meet and confer sessions.  J&M now moves to compel responses to the following discovery requests:  Requests for Production Nos. 3, 6, 11-13 and 21-24, and Special Interrogatory Nos. 5-11.

Currently pending before Judge Whelan is a motion by National Union seeking clarification of the September 18, 2007 Order Denying National Union's Motion for Summary Judgment.  Doc. 68.

**II.   LEGAL STANDARDS**

   **A.   Relevance**

Rule 26 of the Federal Rules of Civil Procedure permits

1  discovery regarding "any nonprivileged matter that is relevant to
2  any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).
3  Relevant information need not be admissible at trial so long as
4  the discovery appears reasonably calculated to lead to the
5  discovery of admissible evidence.  Id.  All discovery is subject
6  to the limitations imposed by Rule 26(b)(2)(C), which provides in
7  relevant part:
8      On motion or on its own, the court must limit the
       frequency or extent of discovery otherwise allowed by
9      these rules or by local rule if it determines that:
10         (i) the discovery sought is unreasonably
           cumulative or duplicative, or can be obtained
11         from some other source that is more
           convenient, less burdensome, or less
12         expensive;
13         (ii) the party seeking discovery has had
           ample opportunity to obtain the information
14         by discovery in the action; or
15         (iii) the burden or expense of the proposed
           discovery outweighs its likely benefit,
16         considering the needs of the case, the amount
           in controversy, the parties' resources, the
17         importance of the issues at stake in the
           action, and the importance of the discovery
18         in resolving the issues.
19 Fed. R. Civ. P. 26(b)(2)(C).  It is within the authority of the
20 court to define the actual scope of discovery to the reasonable
21 needs of the action.  Fed. R. Civ. P. 26 Advisory Committee
22 Notes, 2000 Amendment.
23 **III. DISCUSSION**
24      National Union argues, as an initial matter, that the scope
25 of discovery available to J&M is limited as a result of the
26 summary judgment rulings previously issued by Judge Whelan.  The
27 Court, after carefully considering Judge Whelan's orders,
28 disagrees.  As set forth above, discovery may be obtained

regarding "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Because, as set forth below, all claims alleged in J&M's Second Amended Complaint remain viable, J&M may properly seek any information relevant to these claims.

National Union argues that the effect of Judge Whelan's orders is to narrowly limit discovery to matters pertaining to the interpretation of the J&M-NASSCO[1] contract.  Nat'l Union's Opp'n at 1.  The Court disagrees.  While the determination of coverage may ultimately turn on the interpretation of the J&M-NASSCO contract, the net effect of Judge Whelan's orders is that genuine issues of material fact exist as to whether there is a potential for coverage and, therefore, whether National Union had a duty to defend NASSCO in the underlying *Melendez* action.  Because the potential for coverage under the policy has not been foreclosed, each of Plaintiff's claims -- including its claim for bad faith -- remains pending.  Absent a contrary ruling on the motion for clarification, then, the Court finds that Judge Whelan's summary judgment orders in no way constrain or limit J&M's ability to conduct discovery in this case.[2]

The discovery which J&M presently seeks from National Union comprises three general categories of information:  (1) the *Varis Brown* claim, (2) other claims made by other insureds and

---

[1] National Steel and Shipbuilding Company.

[2] Given its finding that Judge Whelan's orders do not restrict the scope of discovery and the fact that this case has been pending since March 2006, the Court declines to adopt National Union's suggestion (Nat'l Union's Opp'n at 2 n.1) that it defer ruling on the instant motion until after Judge Whelan issues his order on the motion for clarification.

(3) National Union's allocation of defense costs.  The Court addresses each of these categories in turn.

### A.   *Varis Brown* Claim

Requests for Production Nos. 3 and 6 and Special Interrogatory Nos. 5 and 11 seek information related to the so-called *Varis Brown* claim.  According to J&M,

> The Varis Brown action is uniquely relevant to this action because it involves the same parties and the same type of case, yet in the Varis Brown case, National Union defended NASSCO as an additional insured in a similar case involving an injury to a J&M employee, Varis Brown.  However, in the Melendez action, it refused to defend NASSCO.

J&M's Mem. at 3.  J&M contends that information concerning the *Varis Brown* claim is relevant to demonstrating whether National Union acted reasonably in denying coverage for the *Melendez* action.  Id. at 4.  National Union does not contest the fact that it accepted the defense of the *Varis Brown* case, but rather argues that any individual decisions claims handling personnel may have made with respect to the *Varis Brown* claim have no bearing on the issue of whether there was coverage under the policy for the *Melendez* claim.  Nat'l Union's Opp'n at 5.

Importantly, National Union's arguments focus on whether the *Varis Brown* claim can be used by J&M to establish the existence of *coverage* for the *Melendez* claim.  National Union provides no independent argument or authority that the *Varis Brown* claim cannot be used to demonstrate the existence of *bad faith*.  In order to establish a breach of the implied covenant of good faith and fair dealing under California law, commonly referred to as a "bad faith" claim, a plaintiff must show: (1) benefits due under the policy were withheld and (2) the reason for withholding

benefits was unreasonable or without proper cause. <u>Guebara v. Allstate Ins. Co.</u>, 237 F.3d 987, 992 (9th Cir. 2001). Given the divergent coverage positions taken by National Union on the *Varis Brown* and *Melendez* claims despite their apparent similarities, information regarding the *Varis Brown* claim may well bear upon the reasonableness of National Union's decision to deny NASSCO a defense on the *Melendez* claim. At a minimum, J&M is entitled to find out *why* National Union provided a defense in *Varis Brown* when it did not in *Melendez*. Although it is arguable whether J&M can use any information it obtains regarding *Varis Brown* to establish coverage in *Melendez*, it may be able to use this information to demonstrate bad faith on National Union's part. As discussed below, <u>Colonial Life & Accident Ins. Co. v. Superior Court</u>, 31 Cal. 3d 785 (1982), decided by the California Supreme Court, permits discovery regarding other claims handled by an insurer involving other insureds in order to establish bad faith. Here, the *Varis Brown* claim involved the same insured and the same type of insurance policy as the *Melendez* claim, *a fortiori* the *Varis Brown* claim file is discoverable under <u>Colonial Life</u>.

The authorities cited by National Union in opposition to producing information pertaining to the *Varis Brown* claim (<u>see</u> Nat'l Union's Opp'n at 5-6) do not convince the Court that information regarding *Varis Brown* is not relevant to the claims in this case. First, National Union's argument presumes that the only reason it provided coverage on *Varis Brown* was because of an individual decision made by the claims handler on that case. Nat'l Union's Opp'n at 5-6. However, J&M is not required simply to accept that explanation; rather, J&M is entitled to explore

precisely why National Union provided a defense in *Varis Brown* when it did not in *Melendez*. Moreover, the authorities cited by National Union are at odds with the explanation that it is apparently advancing about the reason for its coverage position on the *Varis Brown* claim. The three cases cited by National Union[3] stand for the proposition that claims handlers' opinions have no bearing on whether coverage exists under a particular policy. At the same time, National Union appears to contend that the coverage decision on the *Varis Brown* claim was purely the result of an individual decision made by the claims handler. Again, J&M is entitled to find out more about the claims decision on the *Varis Brown* file and its potential impact on J&M's claims in this case, including its claim that National Union acted in bad faith in denying coverage for the *Melendez* claim.[4]

Accordingly, the Court **GRANTS** J&M's motion with respect to the requests for information relating to the *Varis Brown* claim. National Union shall provide further responses to Requests for Production Nos. 3 and 6 and Special Interrogatory No. 5.[5] The Court notes that California Insurance Code § 791.13 prohibits insurers from providing "personal" or "privileged" information of

---

[3] Chatton v. National Union Fire Ins. Co. of Pittsburgh, PA, 10 Cal. App. 4th 846 (1992), Jordan v. Allstate Ins. Co., 116 Cal. App. 4th 1206 (2004) and Prudential Ins. Co. of America, Inc. v. Superior Court, 98 Cal. App. 4th 585 (2002).

[4] The cases cited by National Union (see n.3, *supra*) primarily concern policy interpretation. None of them addresses or refutes the proposition that a claim file involving the same insured, the same type of insurance policy and virtually identical underlying facts as the case under consideration is relevant to the contention that the insurer acted in bad faith by providing a defense in the former case while failing to do so in the latter case.

[5] The Court will address Special Interrogatory No. 11 in Section III.C, *infra*.

individuals absent written authorization from the individual. Cal. Ins. Code § 791.13. Therefore, National Union shall <u>redact</u> any personal or privileged information relating to Varis Brown (including address, social security number and the like), <u>unless</u> J&M has obtained written authorization from Varis Brown, as required under California Insurance Code section 791.13(a), permitting J&M access to this information.[6]

**B.   Other Claims Discovery**

Requests for Production Nos. 11, 12 and 13 seek information relating to other insureds' claims and complaints against National Union. Specifically, the requests seek the following:

> Request No. 11:  Any and all writings tendering a defense by a purported additional insured, and your response, for other insureds than J&M ASSOCIATES or NASSCO, where NATIONAL UNION and/or AIG or any of its agents denied a tender of defense by a purported additional insured under a Staffing Services Liability policy (within the last five years).

> Request No. 12:  Any and all writings tendering a defense by a purported additional insured and your response, for other insureds than J&M ASSOCIATES or NASSCO, where NATIONAL UNION and/or AIG or any of its agents accepted a tender of defense by a purported additional insured (under a Staffing Services Liability policy within the last five years).

> Request No. 13:  Any and all Complaints filed in California state or federal courts against NATIONAL UNION in the last five years where it was alleged that NATIONAL UNION denied a defense to an additional insured under a general liability policy.

J&M contends that these documents are relevant as J&M intends to show that National Union has "adopted a policy of denying the defense of additional insureds for insurance policies like the one it sold to J&M" as evidence of National Union's bad faith.

---

[6]Given that the identity of Varis Brown is not a secret, there is no need for National Union to redact Varis Brown's name from the documents produced.

J&M's Mem. at 5.

J&M relies on Colonial Life in support of its position that the above discovery requests seek relevant information. In that case, the California Supreme Court considered whether a plaintiff could properly obtain discovery regarding other claims handled by an insurer. The court determined that "[o]ther instances of alleged unfair settlement practices" were relevant to the issue of whether the insurer engaged in unfair claim settlement practices, and that "[d]iscovery aimed at determining the frequency of alleged unfair settlement practices" was likely to produce relevant evidence. Colonial Life, 31 Cal.3d at 791-92. The court further stated that discovery regarding other claims handled by an insurer may also be "highly relevant" to a plaintiff's claim for punitive damages, and observed that "[i]ndirect evidence of the elements of punitive damages may be suggested by a pattern of unfair practices." Id.

National Union contends that the holding in Colonial Life does not apply to this case. National Union first argues that unlike the situation in Colonial Life, the Court here has narrowly focused the remaining coverage issues on the J&M-NASSCO contract, not on "broader questions of coverage or wrongful insurer conduct." Nat'l Union's Opp'n at 8. Again, however, Judge Whelan's summary judgment orders do not constrain J&M's ability to conduct discovery in any way. More importantly, National Union mistakenly focuses solely on discovery for the purpose of establishing *coverage* when it is clear that J&M seeks discovery concerning other claims as a means of demonstrating that National Union acted in *bad faith*.

National Union also contends that <u>Colonial Life</u> is distinguishable because it dealt with an alleged violation of California Insurance Code § 790.03, which no longer provides a private right of action against insurers for violation of the Unfair Practices Act (Cal. Ins. Code § 790 et seq.).  Nat'l Union's Opp'n at 8 (citing <u>Moradi-Shalal v. Fireman's Fund Ins. Cos.</u>, 46 Cal.3d 287 (1988)).  <u>Colonial Life</u> has been followed, however, by California state courts considering not only claims under § 790.03 of the Insurance Code but also common law "bad faith" claims.  <u>See</u>, <u>e.g.</u>, <u>Moore v. American United Life Ins. Co.</u>, 150 Cal. App. 3d 610 (1984).  The Court agrees with J&M that the reasoning in <u>Colonial Life</u> applies whether bad faith is alleged under a statute or under a common law theory.  J&M's Reply at 7.

J&M has thus established, pursuant to <u>Colonial Life</u>, that discovery regarding other claims handled by National Union is relevant to J&M's claims in this action, insofar as the requests seek information pertaining to the same type of policy at issue in this case, i.e., Staffing Services Liability policies.  Thus, the Court finds that Request Nos. 11 and 12 seek relevant information.  Request No. 13, which seeks information pertaining to "general liability" policies, is overbroad in view of the fact that this case concerns a Staffing Services Liability policy.  Therefore, the Court finds that Request No. 13 does not seek relevant information, and **DENIES** J&M's motion with respect to this request.

National Union further contends that responding to the above discovery requests would be "burdensome and oppressive."  Nat'l

Union's Opp'n at 6.  Margaret Porcelli, a Complex Claims Director for National Union, provided a Declaration in opposition to J&M's motion setting forth the following in pertinent part:

> 2.  At all relevant times addressed in this declaration, AIG Domestic Claims, Inc. ("AIGDC"), or its predecessor organization AIG Technical Services ("AIGTS"), was responsible for adjusting insurance claims on behalf of National Union. . . .
>
> . . . .
>
> 5.  Each year AIGDC and its predecessor AIGTS handle thousands of claims for National Union.  Although AIGDC and AIGTS maintain their main claim offices in New York City, they have claim offices throughout the United States.  Closed claims files are sent to offsite storage facilities throughout the United States.
>
> 6.  There is no central database, index, source, spreadsheet or repository - computerized or non-computerized - which tracks all the litigation filed against National Union, nor is there any database, index source, spreadsheet or repository - computerized or non-computerized - which tracks the types of claims made in that litigation, the policies involved, or whether the claims involve additional insured endorsements.  Thus, to respond to J&M's discovery requests demanding copies of all lawsuits filed against National Union in the last five years involving additional insured endorsements on general liability policies would literally involve a manual file-by-file review of tens of thousands of claims files located at claims offices and storage facilities throughout the United States.  To complete such a file by file review would require thousands of hours and divert AIGDC and National Union personnel from their ongoing work responsibilities.
>
> 7.  Similarly, there is no central database, index, source, spreadsheet or repository - computerized or non-computerized - which would permit AIGDC or AIGTS to identify claims made on additional insured endorsements of Staffing Services Liability policies in the last five years.  To respond to J&M's discovery requests demanding copies of all claim files involving other insureds where National Union accepted or rejected the tender of a claim on the additional insured endorsement of a Staffing Services Liability policy within the last five year[s] would require a manual file-by-file review of thousands of claims files located at claims offices and storage facilities throughout the United States. To complete such a file by file review would require thousands of hours and divert AIGDC and National Union

11

personnel from their ongoing work responsibilities. Porcelli Decl., ¶¶ 2, 5-7.

As set forth above, the Court is required to limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). Although J&M contends that National Union should not be permitted to avoid providing information as to other claims based on its purported inability to efficiently access information regarding such claims and the disorganized state of its own claims files (see J&M's Reply at 5), the unrefuted evidence presently before the Court demonstrates that National Union would incur an enormous burden if it were required to respond to Request Nos. 11 and 12 (and 13) propounded by J&M. Therefore, notwithstanding its finding that these requests seek relevant information, the Court finds that the burden and expense of this discovery outweigh its likely benefit. The Court accordingly **DENIES** J&M's motion with respect to Requests for Production Nos. 11 and 12.

This denial as to Requests for Production Nos. 11 and 12 is, however, without prejudice. J&M is entitled to obtain discovery in order to attempt to refute the statements contained in Ms. Porcelli's declaration. Under Rule 26, a party may obtain discovery regarding "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). J&M may, for example, depose Ms. Porcelli regarding the contents of her declaration to demonstrate that the burden or expense of the

discovery it seeks does not outweigh its likely benefit, or may depose other appropriate National Union personnel regarding the organization and location of the other claim files.

### C. Loss Allocation Discovery

Requests for Production Nos. 21-24 and Special Interrogatory Nos. 6-11 seek information relating to National Union's allocation of defense costs. According to J&M, "National Union has been allocating the costs of its own defense in the present bad faith action to the loss experience of its insured J&M." J&M's Mem. at 7. J&M contends that this is improper and that it demonstrates that National Union "has adopted a policy of dealing with J&M in bad faith." Id. J&M points out that its Second Amended Complaint sets forth allegations regarding this practice in relation to J&M's claim for breach of the implied covenant of good faith and fair dealing. Id.

The Second Amended Complaint sets forth the following in pertinent part:

> [National Union] breached the implied covenant of good faith and fair dealing by [its] conduct as alleged herein, including:
>
> (m) Engaging in retaliatory behavior contrary to the insured's interest, by allocating to the insured's "loss experience" the cost of NATIONAL UNION's defense of the instant coverage action, causing the insured to seek replacement general liability coverage and creating increased difficulties for the insured in obtaining replacement coverage, and resulting in higher premiums for the insured.

Second Am. Compl. ¶ 25(m). National Union counters that this is an "untenable" theory that is not viable under California law. Nat'l Union's Opp'n at 10. As National Union should be aware,

however, it is not within this Court's purview to determine whether the above allegation should be stricken -- the district judge must do so. Until and unless the allegation is stricken, it remains a component of J&M's bad faith claim and, as such, J&M is entitled to obtain discovery regarding any nonprivileged matter relevant to the allegation. Moreover, National Union's characterization of this allegation as simply a "wrongful non-renewal theory" (id.) is too narrow. It is clear that J&M's allegation, and the discovery it seeks in relation thereto, go beyond the non-renewal of J&M's policy by National Union. Rather, J&M seeks this discovery as evidence of National Union's alleged bad faith.

Accordingly, the Court **GRANTS** J&M's motion with respect to the requests for information relating to National Union's allocation of defense costs. National Union shall provide further responses to Requests for Production Nos. 21-24 and Special Interrogatory Nos. 6-11.

**D.   Privilege Log**

J&M requests that the Court order National Union to provide a privilege log for any information it withholds or redacts on the basis of privilege. The Court orders both parties to fully comply with the requirements of Rule 26(b)(5)(A) with respect to any discoverable information that is withheld from production as privileged, and directs the parties to prepare any privilege logs in accordance with the ten requirements set forth in Miller v. Pancucci, 141 F.R.D. 292, 302 (C.D. Cal. 1992).

**E.   Request for Sanctions**

J&M contends that sanctions are warranted against National

Union for violating Rules 11 and 37 of the Federal Rules of Civil Procedure. J&M's Mem. at 8-9. The Court finds that sanctions are not warranted. First, Rule 11 is inapplicable to discovery. Fed. R. Civ. P. 11(d). Second, Rule 37 requires the payment of the moving party's reasonable expenses incurred in making a motion for an order compelling discovery only if the motion is granted; the court must not order this payment if the opposing party's nondisclosure, response, or objection was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). Here, the Court finds that National Union's objections to the requested discovery -- which the Court has sustained in part -- were asserted in good faith, and that the circumstances do not justify the imposition of sanctions. J&M's request for an award of its attorneys' fees is accordingly **DENIED**.[7]

### F. Discovery Addressed in Plaintiff's "Sur-Reply" and National Union's Response Thereto

As memorialized in the Order Following Discovery Conference dated January 9, 2008, National Union agreed that notwithstanding its objections, it would produce certain documents responsive to certain portions of J&M's written discovery requests. According to J&M, it received these documents, which relate to Requests for Production Nos. 5, 7, 8, 9, 10, 14, 15, 16 and 20, on or around February 8, 2008. J&M's Sur-Reply at 1-2. J&M contends that National Union's production was deficient, and requests that the

---

[7] When a motion to compel is granted in part and denied in part, the court *may* apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). The Court declines to do so here given its finding that both sides asserted their positions in good faith.

Court order National Union to further respond to the discovery. Specifically, J&M contends that although National Union produced documents Bates-stamped 294 through 609, only three pages of documents, those numbered 331-333, were responsive to the pertinent document requests.

After considering the arguments set forth in J&M's Sur-Reply and in National Union's Response thereto, the Court **ORDERS** that National Union serve amended responses to Requests for Production Nos. 5, 7, 8, 9, 10, 14, 15, 16 and 20.  For each Request, National Union shall specifically identify, by Bates-number, which of the documents it produced are responsive to each particular request.  If no responsive documents exist as to a particular request, National Union's amended response shall specifically and concisely state that fact.[8]  National Union's amended responses shall be served by no later than <u>March 14, 2008</u>.  If, after receiving the amended responses, J&M still believes that any of National Union's responses are deficient, counsel shall meet and confer, in person, concerning the remaining disputed issues.  If the parties are unable to resolve their disputes following the meet and confer, J&M shall contact the undersigned's chambers to obtain a hearing date for a new motion to compel.  If J&M files a motion to compel, it will be

---

[8] The Court notes, for example, that although National Union claims it does not have "commercial 'advertising materials' for Staffing Services Liability policies" (<u>see</u> Nat'l Union's Resp. to Sur-Reply at 4), its response to Request for Production No. 7, which seeks these materials, states that "National Union will produce non-privileged documents responsive to this request, if any, within its care, custody, and control . . ." (<u>see</u> Nat'l Union's Amended Objections and Responses to Plaintiff's First Set of Requests for Production of Documents, attached as Ex. C to Decl. of Scott Ingold in Support of Sur-Reply).

required to specifically explain, with respect to each individual request at issue, which of National Union's responses are deficient and why J&M is entitled to the discovery it seeks.

**IV.  CONCLUSION**

Based on the foregoing, the Court:

1.  **GRANTS** J&M's motion to compel further responses to Requests for Production Nos. 3 and 6 and Special Interrogatory No. 5;

2.  **DENIES WITHOUT PREJUDICE** J&M's motion to compel further responses to Requests for Production Nos. 11-12;

3.  **DENIES** J&M's motion to compel further responses to Request for Production No. 13;

4.  **GRANTS** J&M's motion to compel further responses to Requests for Production Nos. 21-24 and Special Interrogatory Nos. 6-11;

5.  **DENIES** J&M's request for sanctions; and

6.  **ORDERS** that National Union serve amended discovery responses to Requests for Production Nos. 5, 7, 8, 9, 10, 14, 15, 16 and 20 by no later than March 14, 2008.  Counsel shall then meet and confer, in person, concerning any remaining disputed issues.

**IT IS SO ORDERED.**

DATED:  March 4, 2008

_____
Jan M. Adler
U.S. Magistrate Judge