UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| J&M ASSOCIATES, INC., | ) | Case No. 06-CV-0903-W (JMA) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTION TO COMPEL DEPOSITION OF** |
| v. | ) | **DEFENDANT'S FED. R. CIV. P.** |
| | ) | **30(b)(6) WITNESS AND AWARDING** |
| NATIONAL UNION FIRE INSURANCE | ) | **SANCTIONS** |
| COMPANY OF PITTSBURGH, PA, et | ) | |
| al., | ) | |
| | ) | **[Doc. 93]** |
| Defendants. | ) | |
| | ) | |

Plaintiff J&M Associates, Inc. ("J&M") has filed a letter brief in support of its motion to compel the deposition of Defendant National Union Fire Insurance Company of Pittsburgh, PA's ("National Union's") Fed. R. Civ. P. 30(b)(6) witness regarding loss allocation. National Union opposes. For the reasons set forth below, the Court **GRANTS** J&M's motion.

**I.    BACKGROUND**

On March 24, 2008, J&M served a deposition notice upon National Union, seeking to take the deposition of the person(s) most knowledgeable on three topics, including the following:

National Union's practice and procedure with regard to allocating and/or reserving for defense expenses on

      liability claims, including defense expenses incurred by National Union in coverage actions, as reflected on the attached J&M "AIG RMIS Risk Detail Report" (Exhibit "A" hereto).

Holtz Decl., Ex. B-2. J&M sought to take the above deposition, among others, on May 1, 2008 in New York City. <u>Id.</u>, Ex. B-1 & B-2. National Union served objections to the deposition notice on April 17, 2008, which included the following "specific objections" to the above topic (referred to by the parties as "topic number 3"):

      [T]he terms "practice and procedure" and "allocating and/or reserving" are vague, overbroad and unduly burdensome, thus inhibiting National Union in its ability to prepare sufficiently for the deposition. Given the vague and improper description of the scope of [the] Topic, National Union reserves the right to object to specific areas of questioning where the witness did not have sufficient notice and/or time to be able to prepare.

      [B]y seeking information pertaining to "defense expenses incurred by National Union in coverage actions," the topic is unduly burdensome.

      [I]t exceeds the permissible scope of discovery and seeks information neither relevant to any claims or defenses in this action, nor reasonably calculated to lead to the discovery of admissible evidence. J&M's "allocation bad faith" theory is not viable under California law. (Citations omitted.) Moreover, "an insured cannot base a cause of action for bad faith on nonrenewal, even if there is a coverage dispute between the insurer and insured over a prior claim." {Citation omitted.)

<u>Id.</u>, Ex. C.

      Counsel for the parties corresponded both before and after National Union served its objections regarding, *inter alia*, the scope and parameters of the deposition sought by J&M. <u>See id.</u>, Exs. D-I (consisting of letters and e-mails exchanged between J&M's counsel, James Holtz, Esq., and National Union's counsel,

Michelle Bernard, Esq., dated between April 17, 2008 and April 23, 2008).[1]  In particular, Ms. Bernard advised on April 17, 2008 that National Union intended to designate a representative from World Wide Facilities, Inc. ("World Wide") to testify as to topic number 3.  Id., Ex. D-3.  She explained that National Union "outsourced" the underwriting and marketing of Staffing Services Liability policies, such as J&M's, to World Wide, its managing general agent, and that World Wide had made the decision to non-renew J&M's policy.  Id.  As such, she proposed that "a representative from World Wide would be in the best position to address what role, if any, the amount of loss expense allocated to J&M . . . played in the decision to non-renew this account with National Union."  Id.

Mr. Holtz responded to Ms. Bernard's proposal later that same day.  Id., Ex. E-1.  He advised of his position that "the bottom line is that you are producing no persons from National Union for depositions as noticed for May 1."  He observed that the deposition notice did not mention "non-renewal" at all, and stated that "NATIONAL UNION must produce an employee to testify on this topic."  Id. (emphasis in original).  He further contended that J&M was entitled to know why National Union had allocated its coverage defense costs to J&M's loss experience, and whether it was a company practice to do so.  Id.

In response, Ms. Bernard, in an e-mail dated April 18, 2008, disagreed with Mr. Holtz's statement that National Union was not producing any witnesses in response to the deposition notice.

---

[1] R. Gaylord Smith, Esq. of Lewis Brisbois Bisgaard & Smith LLP substituted in this matter in place of Ms. Bernard and the Gordon & Rees LLP law firm on June 24, 2008.  See Doc. 102.

Id., Ex. G-1.  She explained that notwithstanding its objections to the notice, which were "interposed to preserve all of National Union's rights regarding the relevance and admissibility of your Rule 30(b)(6) topics, National Union intends to produce Rule 30(b)(6) designees on May 1, 2008, in New York City."  Id.  She further advised that it was "entirely appropriate for National Union to designate a witness from its managing general agent World Wide to provide deposition testimony to the extent that National Union deems World Wide to be most knowledgeable regarding any of the requested topics."  Id.  She also stated that National Union "has no stated 'policy' or 'procedure' of allocating coverage counsel/coverage litigation expenses to the insured's loss experience," and suggested that Christine Vitucci or Audrey Samit[2] could provide testimony regarding the claim payment process, including the "mechanics" of how claims payments are made and how they are characterized or coded.  Id.  Additionally, she advised that Peter Kalin, the Manager of Underwriting Operations for World Wide, would testify regarding the decision to non-renew J&M's policy.  Id.

    Mr. Holtz sent a responsive e-mail the following day, on April 19, 2008, in which he explained:

> [T]he 30(b)(6) notice asks essentially for someone to explain the loss allocation on the . . . AIG RMS loss run.  I do not understand why you and [Matthew Elstein, Esq.] repeatedly talk about non-renewal because I am not asking for a witness on that topic, nor does the

---

[2]Ms. Vitucci served as the claims analyst for the underlying Melendez claim, and Audrey Samit served as the claims director overseeing both the Melendez and Varis Brown claims.  Def.'s Br. at 2; see also March 4, 2008 Order [Doc. 89], Section III.A (containing discussion of the Varis Brown claim).  The depositions of Ms. Vitucci and Ms. Samit took place during three days of depositions (April 30, 2008 to May 2, 2008) which took place in New York City in this matter.

>   amended complaint allege a cause of action for "wrongful non-renewal." The complaint alleges that the allocation of [National Union's] coverage expenses to the insured's loss experience increased the total numbers on the loss run, which had an effect on the ability generally to market the J&M risk, was unreasonable (bad faith) and perhaps was done in retaliation for J&M fighting AIG[3] on the coverage denial. This has nothing to do with non-renewal by [National Union] of the expiring policy as [National Union] had freedom of choice to non-renew. Someone somewhere can explain what the AIG RMS form is and why the AIG coverage expenses incurred in fighting the action brought by J&M against National Union were allocated to the insured's loss experience, and whether that was just a one-time thing for J&M or is company policy. . . . [¶] [S]omeone knows what that form means and how it is generated and where the info on it comes from, generally even if not specifically for J&M, so I asked for someone familiar with the methodology or practice of filling out the form. . . . Please produce someone who can explain what this document is, and how and why it was filled out in the way it was.

Id., Ex. H-1.

Subsequently, on April 22, 2008, the undersigned's law clerk held a telephone conference with counsel, at which time Mr. Holtz advised of his concern that the person designated by National Union would not be able to adequately testify as to the subject topic. Ms. Bernard stated that National Union would provide witnesses to testify as to each of the three topics set forth in the Rule 30(b)(6) deposition notice, without qualification, and that it was premature for J&M to raise the issue of the adequacy of the witness as to topic number 3. Ms. Bernard did not provide the name of the witness, but confirmed that the witness would be able to adequately testify. Mr. Holtz conceded that the proper course was to go forward with the depositions, and to raise the issue with the Court afterwards if any of the witnesses produced

---

[3] AIG was responsible for adjusting insurance claims on behalf of National Union during the time period relevant to this case.

1  were not able to adequately testify as to any of the designated
2  topics.  He sent a confirming letter to this effect on April 23,
3  2008.  Id., Ex. I.
4      Mr. Holtz deposed Mr. Kalin of World Wide on May 1, 2008.
5  Id., Ex. J-1.  Mr. Kalin testified that he was not the person
6  most knowledgeable as to the subject topic, and Ms. Bernard
7  interjected that he was not being designated for that topic.
8  Id., Ex. J-3.  The following exchange then took place:

>     MR. HOLTZ:  Okay.  Ms. Bernard who are you producing
>     for topic number 3, today?
>
>     MS. BERNARD:  National Union is going to stand on its
>     written objections as to topic number 3, and pursuant
>     to our discussions yesterday, we will not be producing
>     a witness.

13 Id.  J&M subsequently filed the instant motion.

**II.  DISCUSSION**

   **A.  National Union's Counsel Should Have Continued to Meet
       and Confer on This Issue**

17     According to the record before the Court, National Union
18 changed its mind about producing a 30(b)(6) witness on topic
19 number 3 sometime between April 22, 2008, when Ms. Bernard
20 represented to the Court's law clerk that it would produce a
21 witness, and May 1, 2008, when Ms. Bernard stated, apparently to
22 Mr. Holtz's surprise, that it would not produce a witness.  It is
23 unclear to the Court why National Union changed its position.
24 National Union's argument that it changed its position after J&M
25 rejected Dorothy Taylor, the President of World Wide, as a
26 witness is not supported by the record before the Court.  First,
27 Ms. Taylor is not mentioned by name in any of the correspondence
28 provided to the Court.  Second, although J&M initially questioned

1  the adequacy of a World Wide representative to serve as a Rule
2  30(b)(6) witness on behalf of National Union (see Holtz Decl.,
3  Ex. E-1), it eventually determined that it would take the
4  deposition of such a witness and would reserve its rights to
5  challenge the witness's qualifications as a managing agent as
6  well as the adequacy of the witness to testify on the subject
7  topic.  See id., Ex. I-3 (referring to Peter Kalin of World
8  Wide).

9      The parties' meet and confer efforts regarding this topic
10 seemingly ended on or around April 23, 2008.  Indeed, based on
11 the record provided to the Court, Ms. Bernard did not respond to
12 correspondence dated April 19, 2008 from Mr. Holtz setting forth
13 the matters on which he intended to seek deposition testimony.
14 The Court has communicated to counsel, throughout the myriad
15 discovery disputes in this case, the extreme importance this
16 Court places on parties' efforts to meet and confer extensively
17 regarding all discovery matters.  The Court's local rules also
18 contain a meet and confer requirement.  See Civ. L.R. 26.1 a.  In
19 the Court's view, Mr. Holtz's April 19, 2008 correspondence (see
20 Holtz Decl., Ex. H-1) clearly and concisely sets forth the
21 information J&M wished to obtain by way of the 30(b)(6)
22 deposition.  The Court does not understand why National Union did
23 not respond to this correspondence, and finds that it should have
24 done so before electing to take the position it eventually did,
25 i.e., to stand on its written objections to the deposition
26 notice, after representing to the Court and to opposing counsel
27 that it would produce a witness to testify on the subject topic.
28 //

    **B.   J&M's Counsel's Correspondence of April 19, 2008 Adequately Set Forth the Scope of the Rule 30(b)(6) Deposition Sought by J&M**

As indicated above, the Court finds that Mr. Holtz's correspondence of April 19, 2008 adequately set forth, with reasonable particularity, the scope of the Rule 30(b)(6) deposition sought by J&M. Thus, it clarified any questions National Union may have had about the intended matters for examination, and resolved any issues as to "vagueness" that National Union contends existed. The Court also finds that the information sought, as clarified in Mr. Holtz's correspondence, would not place a burden upon National Union. The Court accordingly overrules National Union's first and second objections to the deposition notice, which are premised upon vagueness and burdensomeness.

    **C.   The Court Has Previously Ruled that Discovery Relating to J&M's "Loss Allocation" Theory is Permissible**

As discussed in this Court's March 4, 2008 Order, the Second Amended Complaint sets forth the following in pertinent part:

> [National Union] breached the implied covenant of good faith and fair dealing by [its] conduct as alleged herein, including:
>
> > (m) Engaging in retaliatory behavior contrary to the insured's interest, by allocating to the insured's "loss experience" the cost of NATIONAL UNION's defense of the instant coverage action, causing the insured to seek replacement general liability coverage and creating increased difficulties for the insured in obtaining replacement coverage, and resulting in higher premiums for the insured.

Second Am. Compl. ¶ 25(m). The Court previously stated the following in response to National Union's argument that the above

allegations set forth an "untenable" theory that is not viable under California law:

> As National Union should be aware, it is not within this Court's purview to determine whether the above allegation should be stricken -- the district judge must do so. Until and unless the allegation is stricken, it remains a component of J&M's bad faith claim and, as such, J&M is entitled to obtain discovery regarding any nonprivileged matter relevant to the allegation. Moreover, National Union's characterization of this allegation as simply a "wrongful non-renewal theory" (id.) is too narrow. It is clear that J&M's allegation, and the discovery it seeks in relation thereto, go beyond the non-renewal of J&M's policy by National Union. Rather, J&M seeks this discovery as evidence of National Union's alleged bad faith.

Mar. 4, 2008 Order at 13-14.

Although, as National Union observes, the March 4 Order pertained to the written discovery then before the Court, the Court finds that the above language still should have been instructive to National Union with respect to the instant dispute. The Court has already stated, in no uncertain terms, that J&M is entitled to discovery in relation to the "loss allocation" issue, and it is entitled to take a deposition on this topic as well as conduct written discovery. The Court is thus dismayed and bewildered that National Union continues to deny discovery to J&M on the basis that this theory cannot give rise to bad faith liability. See Def.'s Objections to Deposition Notice, attached as Ex. C to Holtz Decl., at ¶ 9; Def.'s Br. at 4-6. Based on its previous and current finding that the information sought is relevant to J&M's claims in this case, the Court overrules National Union's third objection to topic number 3 set forth in the 30(b)(6) deposition notice.

In conclusion, the Court finds that J&M has properly set

forth, with reasonable particularity, the information it seeks by way of the 30(b)(6) deposition, that the information sought is relevant to J&M's claims in this case, as the pleadings presently stand, and that National Union's objections to the deposition notice are properly overruled.  Accordingly, the Court **ORDERS** that National Union shall produce a witness pursuant to Rule 30(b)(6) to testify regarding the "loss allocation" issue, as described in further detail in Mr. Holtz's April 19, 2008 correspondence (see Holtz Decl., Ex. H-1) and as summarized in Section I., *supra* pp. 4-5.

**D.   J&M's Request for Sanctions**

J&M contends that sanctions are warranted against National Union pursuant to Rule 37 of the Federal Rules of Civil Procedure.  J&M's Mem. at 6-9.  The Court agrees.

Rule 37 provides in relevant part:

> The court where the action is pending may, on motion, order sanctions if:
>
> > a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition[.]

Fed. R. Civ. P. 37(d)(1)(A)(i).  Further, "[t]he court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(3).

Here, the Court finds that National Union's failure to produce a Rule 30(b)(6) witness on the topic of loss allocation

was not substantially justified. The Court finds that National Union shall thus be required to pay J&M's attorney's fees of $1,200.00 (four hours at $300 per hour) for wasted deposition time and $1,800.00 (eight hours at $225 per hour) for preparation of the instant motion, totaling $3,000.00. The remainder of the attorneys' fees sought by J&M were not incurred as a result of National Union's failure to produce a 30(b)(6) witness on the subject issue. See Fed. R. Civ. P. 37(d)(3).

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS** J&M's motion to compel the deposition of National Union's Fed. R. Civ. P. 30(b)(6) witness regarding loss allocation, as set forth in further detail above. The 30(b)(6) witness shall be made available for deposition in San Diego within fifteen days of the date of this Order.

Additionally, the Court **AWARDS** J&M's counsel the sum of $3,000.00 as sanctions for National Union's failure to produce a witness for deposition pursuant to Rule 30(b)(6). National Union shall pay this amount directly to J&M's counsel within fifteen days of the date of this Order.

**IT IS SO ORDERED.**

DATED: June 27, 2008

Jan M. Adler
U.S. Magistrate Judge