UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

J&M ASSOCIATES, INC.,       )   Case No. 06-CV-0903-W (JMA)
                              )
         Plaintiff,    )   **ORDER GRANTING IN PART AND**
                              )   **DENYING IN PART DEFENDANT'S**
v.                             )   **MOTION FOR AN ORDER COMPELLING**
                              )   **THE PRODUCTION OF ITEMS**
NATIONAL UNION FIRE INSURANCE   )   **RELATING TO PLAINTIFF'S CLAIM**
COMPANY OF PITTSBURGH, PA, et  )   **FOR LOSS OF FUTURE PROFITS**
al.,                        )
                              )
         Defendants.   )   **[Doc. 115]**
                              )
_____ )

    Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") has filed a letter brief in support of its motion for an order compelling the production of items relating to Plaintiff J&M Associates, Inc.'s ("J&M's") claim for loss of future profits. J&M opposes. For the reasons set forth below, National Union's motion is **GRANTED IN PART** and **DENIED IN PART**.

I.   <u>**BACKGROUND**</u>

    National Union seeks an order compelling the production of the following items:

(1)  E-mails between J&M and NASSCO,[1] dated between 2004 and 2005, and after September 14, 2006;

(2)  A download of J&M's "Quickbooks" data for certain accounts regarding individual workers sent by J&M to NASSCO between 2002 and 2007;

(3)  The invoices for work orders from NASSCO between 2002 and 2007;

(4)  J&M's tax returns between 2002 and 2007; and

(5)  The same documentation for J&M Marine & Industrial, LLC ("J&M Marine").

Def.'s Br. at 1.

As part of its damages, J&M claims the loss of future profits it incurred after NASSCO apparently ended its relationship with J&M.  National Union seeks the above documents in order to determine whether NASSCO truly terminated J&M because of the coverage decision by National Union at issue in this litigation, and if so, whether J&M's claimed damages for lost profits are supported and reasonable.  Id. at 1-2.

II.  **DISCUSSION**

   A.  **J&M Was Not Required to Provide the Above-Described Financial Information in Connection With Its Initial Disclosures**

National Union first argues that the above-described financial information should have been provided by J&M in connection with the initial disclosure requirements of Fed. R. Civ. P. ("Rule") 26(a)(1)(A)(ii) and (iii).  Id. at 2-3.  Under the express language of the Rule, however, a party need only provide, as part of its initial disclosures, "documents, electronically stored information, and tangible things" that it "*may use to support its claims or defenses*" as well as "a

---

[1]National Steel and Shipbuilding Company.

computation of each category of damages claimed" and "the documents or other evidentiary material . . . *on which each computation is based*, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(ii)-(iii) (emphases added). "The initial disclosure obligation of subdivisions (a)(1)(A) and (B) has been narrowed to identification of witnesses and documents that *the disclosing party may use* to support its claims or defenses. . . . A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use." Fed. R. Civ. P. 26 Advisory Committee Notes, 2000 Amendment (emphasis added).

Therefore, a party need not produce every piece of information or documentation bearing on damages, but rather only that information upon which the party's computation of damages is based. Although some of the information now sought by National Union *could have been* included in J&M's initial disclosures, this is not necessarily so, and the Court does not find that *all* of the information now requested should have been provided at the initial disclosure stage. Rather, it seems to the Court that if National Union desired the specific documents and materials it now seeks, it should have propounded discovery requests for this information. Thus, unless J&M intends to *use* any of the above-described financial information at a pretrial conference, to support a motion, at trial, or in discovery (<u>see</u> Fed. R. Civ. P. 26 Advisory Committee Notes, 2000 Amendment, defining "use"), it was not obligated to provide the information now sought by National Union as part of its initial disclosures.

1  Moreover, J&M served its initial disclosures on September

2  11, 2006, nearly two years before National Union filed this

3  motion.  Def.'s Br., Ex. 1.  The time for National Union to

4  contend that J&M's initial disclosures were deficient has long

5  since passed.

6        **B.**   **National Union's Motion to Compel Regarding Its**
   **Requests for Production of Documents Is Not Barred by**

7            **Paragraph 5 of the Court's Scheduling Order**

8  Paragraph 5 of the Case Management Conference Order

9  Regulating Discovery and Other Pretrial Proceedings issued by the

10 Court on November 6, 2006 provides as follows:

11      **<u>All disputes concerning discovery shall be brought to</u>**

   **<u>the attention of Magistrate Judge Adler no later than</u>**

12 **<u>thirty (30) days following the date upon which the</u>**
   **<u>event giving rise to the dispute occurred.  For oral</u>**

13 **<u>discovery, the event giving rise to the discovery</u>**
   **<u>dispute is the completion of the transcript of the</u>**

14 **<u>affected portion of the deposition.  For written</u>**
   **<u>discovery, the event giving rise to the discovery</u>**

15 **<u>dispute is the service of the response.  Counsel are</u>**
   **<u>required to meet and confer prior to contacting the</u>**

16 **<u>Court regarding all discovery disputes pursuant to the</u>**
   **<u>requirements of Local Rules 16.5(k) and 26.1(a).</u>**

17

18 Nov. 6, 2006 Order [Doc. 30] at ¶ 5 (emphasis in original).  The

19 clear import of this requirement is that counsel must meet and

20 confer promptly after a discovery dispute arises and, if counsel

21 are unable to resolve the dispute, they must contact the Court

22 within the thirty day period after the dispute arises.  In this

23 instance, the dispute arose upon the service of J&M's responses

24 to National Union's Requests for Production of Documents, which

25 occurred on June 20, 2008.  Therefore, National Union's counsel

26 should have met and conferred with J&M's counsel <u>and</u> notified the

27 Court of the discovery dispute by no later than July 21, 2008.

28 Instead, National Union's counsel waited until July 17, 2008 to

06cv0903

inform J&M of National Union's position that J&M's responses to
the document requests were deficient (Def.'s Br. at 2 & Ex. 4),
and waited until August 21, 2008 to provide its first
notification to the Court of the dispute, thirty-one (31) days
after the deadline for doing so.

Although National Union technically violated Paragraph 5 of
the Court's Case Management Order, the Court finds that the
circumstances do not warrant prohibiting National Union from
proceeding with this motion.  National Union's current counsel,
R. Gaylord Smith, Esq., did not enter the case until June 20,
2008 [Doc. 100], the same day J&M served its discovery responses.
Although the prudent course of action would have been for Mr.
Smith to contact the Court to seek a continuance of the "30-day
rule" set forth in Paragraph 5 (the Court very likely would have
granted such a request) while he familiarized himself with the
case, the Court finds that Mr. Smith did not take an unreasonable
amount of time, in view of the situation, to analyze the case,
review the discovery responses, and attempt to resolve the
discovery dispute informally.

The Court thus finds that National Union's motion regarding
its requests for production of documents is not barred by
Paragraph 5 of the Court's Case Management Order.

**C.   The Missing E-mails Between J&M and NASSCO**

National Union seeks e-mails from 2004 and 2005 between J&M
and NASSCO or, if the e-mails have been destroyed, an order to
show cause why a preclusion order should not be issued on J&M's
loss of profits claim, or an order granting access to J&M's
servers to perform an electronic recovery of the e-mails.

06cv0903

National Union also seeks e-mails dated after September 14, 2006.
National Union argues that the e-mails chronicle the daily
dealings between J&M and NASSCO, and document NASSCO's requests
for workers from J&M, NASSCO's satisfaction or lack thereof with
J&M's performance, and J&M's ability to perform under the labor
supply contract between it and NASSCO after Hurricane Katrina.
These e-mails, National Union contends, "go to the heart of J&M's
claim regarding the decline in orders from NASSCO." Def.'s Br.
at 3. During the telephonic Discovery Conference conducted by
the Court on November 24, 2008, National Union's counsel also
argued that the e-mails may provide information regarding the
impact of NASSCO's decision in 2004 to transition from exclusive
bidding by J&M to supply workers to a competitive bidding system
in which staffing supply businesses other than J&M could also
participate in bidding on and supplying workers to NASSCO.

     National Union asserts that J&M should have produced the e-
mails in response to Requests for Production Nos. 22, 23, 25, 26
and 27. These requests seek the following:

> Request No. 22: Any and all DOCUMENTS evidencing,
> constituting, reflecting, or RELATED TO NASSCO not
> continuing to do business with you.

> Request No. 23: All DOCUMENTS evidencing,
> constituting, reflecting, or RELATED TO the basis of
> YOUR contention that because NATIONAL UNION did not
> agree to provide coverage to NASSCO for the MELENDEZ
> LAWSUIT under the POLICY, NASSCO cancelled and/or did
> not renew its contracts with YOU or did not continue to
> do business with YOU.

> Request No. 25: All DOCUMENTS evidencing,
> constituting, reflecting, or RELATED to all
> COMMUNICATIONS between YOU and NASSCO related to the
> MELENDEZ LAWSUIT, the VARIS BROWN LAWSUIT, the MELENDEZ
> CLAIM, and the VARIS BROWN CLAIM.

> Request No. 26: All DOCUMENTS evidencing,
> constituting, reflecting or related to YOUR clients for

06cv0903

whom YOU provide temporary staffing services from
January 1, 1998 to present.

Request No. 27:  All DOCUMENTS evidencing,
constituting, reflecting or RELATED TO contracts and/or
agreements YOU entered into with others to provide
temporary workers and/or temporary staffing services
from January 1, 1998 to present.

Def.'s Requests for Produc. of Docs., Nos. 22, 23, 25, 26 and 27,

Def.'s Br., Ex. 2.  After receiving J&M's responses to its

document requests, National Union's counsel sent an e-mail on

July 17, 2008 requesting the production of any e-mail traffic

between NASSCO and J&M from the "height of the [staffing] program

in 2004 to the present."  Def.'s Br., Ex. 4.  In response, J&M

produced, as a courtesy in its view, some thirty e-mails, dated

between January 3, 2006 and September 14, 2006, and advised that

e-mails prior to 2006 had been deleted.  Def.'s Br. at 3 & Ex. 5.

        J&M argues that National Union never requested the e-mails

it now wants, and, citing Rule 34's requirement that requests for

production describe with "reasonable particularity" each item or

category of items to be inspected, contends that if National

Union wanted the e-mails, it should have specifically asked for

them.  Pl.'s Br. at 2, citing Fed. R. Civ. P. 34(b)(1)(A).  The

Court disagrees, and finds that the e-mails currently sought are

potentially responsive to Request Nos. 22, 23 and 25.  That is,

if the e-mails reflect the reason that NASSCO did not continue to

do business with J&M, then they are relevant and responsive to

Request No. 22.  If the e-mails reflect that NASSCO ceased doing

business with J&M because of National Union's coverage decision

in the Melendez matter, then they are relevant and responsive to

Request No. 23.  Finally, if the e-mails reflect communications

between J&M and NASSCO regarding the <u>Melendez</u> and <u>Brown</u> claims
and lawsuits, then they are relevant and responsive to Request
No. 25.  The problem is that because the e-mails from 2004
through 2005 were deleted, it cannot be said with certainty
whether they are responsive to these Requests.[2]

During the November 24, 2008 telephonic Discovery
Conference, counsel for J&M advised that it was J&M's practice to
delete e-mails at the end of each calendar year for the preceding
calendar year.  For example, e-mails from 2004 were deleted at
the end of 2005, and e-mails from 2005 were deleted at the end of
2006.  Contrary to J&M's argument that there is no obligation to
preserve documents until a document request seeking such
documents is served, the Court believes that it is clear that a
party has a duty to preserve all potentially relevant documents,
including e-mails, once a lawsuit is reasonably probable or
filed.[3]  This lawsuit commenced on March 16, 2006, when J&M filed
its original complaint in the Superior Court of California,
County of San Diego, and J&M's counsel, James Holtz, Esq., was
involved in representing J&M as of October 5, 2005, *after*
coverage had already been denied by National Union.  <u>See</u> Doc. 1;

---

[2]The Court sustains J&M's objections to Request Nos. 26 and 27 on
the basis that the requests are "so vague and broad, that [they] would
be nearly impossible to comply with."  Pl.'s Resps. to Def.'s Requests
for Produc. of Docs., Nos. 26-27, Def.'s Br., Ex. 3.  Request No. 26
in particular is, on its face, overbroad.  Request No. 27 is overbroad
to the extent it seeks all documents arising out of J&M's *contractual
relations*, which is how National Union appears to be construing this
Request, rather than simply J&M's contract documents.

[3]Litigants have a duty to preserve evidence which is known, or
reasonably should be known, to be relevant to the action.  <u>Baliotis v.
McNeil</u>, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994).  The duty to preserve
extends to the period before litigation when a party reasonably should
know that the evidence may be relevant to anticipated litigation.
<u>E*Trade Secs. LLC v. Deutsche Bank AG</u>, 230 F.R.D. 582, 588 (D. Minn.
2005).

06cv0903

Def.'s Br., Ex. 6.  The Court finds that J&M had an obligation to preserve documents as of late 2005, in that litigation was surely anticipated by that time, and that no potentially relevant e-mails should have been deleted thereafter.

Accordingly, because the e-mails may contain relevant information, and because the 2004 and 2005 e-mails should not have been deleted, National Union's request for an order granting access to J&M's servers to perform an electronic recovery of the e-mails is **GRANTED**.  J&M's counsel shall forthwith provide information to National Union regarding the location of any personal computers and/or servers which may contain e-mails between J&M and NASSCO dated between 2004 and 2005.  National Union shall retain an independent professional to conduct an electronic recovery of these e-mails.  The electronic recovery shall be performed at National Union's own expense without prejudice to its right to seek reimbursement of such expenses from J&M in the future.  Counsel shall meet and confer regarding an appropriate protocol for the electronic recovery in order to ensure that any non-relevant or personal information is adequately protected from recovery.  Any e-mails electronically recovered *shall be provided directly to J&M's counsel* for review; J&M's counsel shall then, within fourteen (14) days, produce any e-mails relevant to the claims or defenses in this case and responsive to Request Nos. 22, 23 and 25.

As for the e-mails dated after September 14, 2006, J&M's counsel advised during the November 24, 2008 telephonic Discovery Conference that there are no such e-mails which are relevant or responsive to National Union's document requests.  Thus, the Court **DENIES** National Union's request for these e-mails.

06cv0903

### D.   Quickbooks, Invoices, and Tax Returns

National Union also seeks financial information from J&M including a download of J&M's "Quickbooks" data for accounts numbered 4000 (Income - Sales), 5010 (Gross Temp Employee Wages), and 5030 (Temp Employee Per Diem) regarding individual workers furnished by J&M to NASSCO between 2002 and 2007, the invoices for work orders from NASSCO between 2002 and 2007, and J&M's tax returns between 2002 and 2007.  National Union asserts that J&M should have produced these materials in response to Requests for Production Nos. 20 and 28.  These requests seek the following:

> Request No. 20:  All DOCUMENTS evidencing, constituting, reflecting or RELATED TO YOUR financial condition, including but not limited to, financial statements, profit and loss statements, accounting records, audits, and tax returns, from January 1, 1998 to present.

> Request No. 28:  All DOCUMENTS evidencing, constituting, reflecting, or RELATED TO YOUR profits and losses from January 1, 1998 to present.

Def.'s Requests for Produc. of Docs., Nos. 20 and 28, Def.'s Br., Ex. 2.  J&M set forth various objections to these requests, including that the requests were "vague, ambiguous, and overbroad," and, without waiving its objections, produced yearly profit and loss statements for the years 2002 through 2007 in response thereto.  Pl.'s Responses to Requests for Produc. of Docs., Nos. 20 and 28 & Ex. D, Def.'s Br., Ex. 3.  After counsel met and conferred, J&M produced its monthly profit and loss statements.  Def.'s Br., Ex. 7.

The Court agrees with J&M's position that the Quickbooks data and the NASSCO invoices were never requested by National Union.  Request Nos. 20 and 28, which sought documents related to J&M's "financial condition" and "profits and losses", cannot be

said to reasonably encompass the detailed and specific data that National Union now seeks.  The Court can only compel the production of documents actually asked for in discovery.  If National Union wanted this information, it should have described it with "reasonable particularity."  Fed. R. Civ. P. 34(b)(1)(A). Here, National Union failed to articulate its request for information of this type until July 17, 2008, when it requested "business records showing the staffing requests from NASSCO" (Def.'s Br., Ex. 4), and failed to specifically ask for the Quickbooks data until August 14, 2008 (<u>id.</u>, Ex. 8-001), well after the close of discovery.  Its attempt to shoehorn these current requests for information into previous document requests is, in the Court's view, an attempt to conduct discovery past the discovery cutoff.  The Court thus **DENIES** National Union's request for an order compelling J&M to produce this information.

As to J&M's tax returns, although National Union specifically sought this information via Request No. 20, National Union failed to meet and confer with J&M on this issue at any time prior to the filing of this motion.  <u>See</u> Def.'s Br., Exs. 4, 8 and 10 (consisting of counsel's meet and confer efforts).  The clear import of Paragraph 5 of the Court's Case Management Conference Order is that counsel must meet and confer regarding <u>all</u> disputed issues before such issues are presented to the Court.  <u>See also</u> Civ. L.R. <u>26.1</u> <u>a.</u> ("The court shall entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel shall have previously met and conferred concerning all disputed issues.")  That did not occur here.  The Court thus **DENIES** National Union's request for an order compelling J&M to produce its tax returns.

06cv0903

**E.    Documents Relating to J&M Marine**

National Union argues the Court should order the production of financial documents relating to J&M Marine. J&M Marine, however, is not a named party in this case, and there is no indication that National Union ever sought financial documents relating to J&M Marine through discovery, via either a document request upon J&M or a subpoena duces tecum upon J&M Marine itself. The first time that National Union appears to have asked for or even mentioned financial documents relating to J&M Marine was in National Union's counsel's July 17, 2008 e-mail to J&M's counsel. <u>See</u> Def.'s Br., Ex. 4. Again, the Court can only compel the production of documents actually asked for in discovery. National Union did not, through formal discovery, request the production of, or subpoena, the documents it now seeks.

Furthermore, National Union has not convinced the Court that it should order J&M to produce documents relating to J&M Marine, which appears to be a separate and distinct entity, on an alter ego or single enterprise theory. National Union has demonstrated only that J&M and J&M Marine had the same owners and/or shareholders, had some of the same employees, conducted similar staffing services businesses, and were insured under the same insurance policy. In order to establish an alter ego relationship between J&M and J&M Marine, however, National Union would have to show that J&M Marine "is so organized and so controlled, and its affairs . . . so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct" of J&M. <u>See</u> <u>Las Palmas Associates v. Las Palmas Center Associates</u>, 235 Cal. App. 3d 1220, 1249 (1991) (emphasis and citation omitted).

06cv0903

1  National Union has not done so.  In addition, neither of the

2  authorities cited by National Union provides any guidance

3  regarding the propriety of obtaining discovery from a non-party

4  entity on the basis that it is an alleged single enterprise with

5  a party in the case.

6  　　　It would have been easy enough for National Union to seek

7  documents from or about J&M Marine.  Here again, it appears to

8  the Court that National Union is attempting to conduct discovery

9  past the discovery cutoff by shoehorning its current requests for

10 information into previous document requests.

11 　　　Accordingly, National Union's request for documents relating

12 to J&M Marine is **DENIED**.

13 **III.  CONCLUSION**

14 　　　Based on the foregoing, National Union's motion for an order

15 compelling the production of items relating to J&M's claim for

16 loss of future profits is **GRANTED IN PART** and **DENIED IN PART**.

17 Specifically, National Union's motion for an order compelling the

18 production of e-mails between J&M and NASSCO dated between 2004

19 and 2005 is **GRANTED IN PART**, as set forth in further detail

20 above.  National Union's motion is **DENIED** in all other respects.

21 　　　**IT IS SO ORDERED.**

22 DATED:  December 2, 2008

23 

24                              Jan M. Adler
                              U.S. Magistrate Judge

25

26

27

28

                              13                              06cv0903